(C. D. 1454)

JOHN SEXTON & CO., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided July 25, 1952)

*Wallace & Schwartz* (*Joseph Schwartz* and *Barnes, Richardson & Colburn* (by *Edward N. Glad*) of counsel) for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*Richard H. Welsh, Dorothy C. Bennett*, and *Samuel D. Spector*, special attorneys), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges; CLINE, J., not participating

EKWALL, Judge: This case involves a protest against the collector's assessment of duty on merchandise described in the invoice as Cuban cane sugar sirup, pineapple-flavored, at 20 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930, as a nonenumerated manufactured article, with an allowance of 20 per centum from that rate as a product of Cuba. Various claims are made in the protest, the chief one being that the merchandise is properly dutiable under paragraph 502 of the same act, as modified by the Supplemental Cuban Trade Agreement, T. D. 50541, at 0.1 cent per gallon, plus 0.11 cent additional for each per centum over 48 per centum of total sugars and fractions of a per centum in proportion, as sugar sirup.

This case was originally tried in Chicago on July 2 and July 5, 1945, and a decision was rendered by this court on April 17, 1951. (*John Sexton & Co., Inc.* v. *United States*, 26 Cust. Ct. 180, C. D. 1321.) It was claimed that the merchandise was such as or similar to that involved in *United States* v. *Olavarria & Co., Inc.*, 37 C. C. P. A. (Customs) 40, C. A. D. 417. We held, however, that the presumption of correctness attaching to the collector's classification of the merchandise as a nonenumerated manufactured article under paragraph 1558 had not been overcome, stating (p. 184):

The testimony above set forth is insufficient to sustain plaintiff's burden of proof that the instant commodity is identical or similar for duty purposes to that involved in the *Olavarria* case, *supra*. No sample of the instant commodity is present, nor was the record in the cited case incorporated, and as pointed out, neither of the witnesses had any personal knowledge of the method of manufacture of this pineapple-flavored mixture. Therefore, the claims of the plaintiff must be overruled. * * *

Subsequently, a motion for a rehearing made by plaintiff was granted by order of this court dated June 5, 1951 (Abstract 55644). On October 2, 1951, a hearing was held in Chicago and additional testimony was offered on behalf of the plaintiff.

At the original trial, Henry B. Taylor, chief chemist in the United States Customs Laboratory at the port of Chicago, testified that the merchandise was a flavored solution of sugar and water, probably a

saturate; that it contained 76½ per centum invert sugar and 2.87 per centum sucrose, making the total sugars 79.37 per centum; and that the polariscopic test showed a minus 16.1 degrees, indicating that the major portion of the sugars was invert sugars. He stated that the mixture had a pineapple flavor, but he was unable to tell whether it was a natural or an artificial flavor, and that in his opinion the flavoring material consisted of less than one-half of 1 per centum of the mixture.

Brice A. Lane, examiner in the office of the appraiser at the port of Chicago, testified at the original trial that he had seen a sample of the within merchandise; that he had reported the component material of chief value for internal revenue purposes to be invert sugars in the amount of 76½ per centum; and that this sirup was identical with that covered by other invoices in which he had the formula.

At the rehearing, Mr. Lane was recalled to the stand and testified as follows:

Q. I show you the papers in this case and ask you if you passed upon the goods involved in this shipment?—A. Yes, sir.

Q. Did you personally see the merchandise or samples of the same?—A. Yes.

Q. Now, I ask you whether you are also familiar with the merchandise which was the subject of United States vs. Olavarria, C. A. D. 417?—A. Yes.

Q. Will you please state how you became familiar with that merchandise?—A. Importations of that type of merchandise from that shipper.

Q. At the port of Chicago?—A. At the port of Chicago.

Q. Which you personally passed upon?—A. Yes, sir.

Q. And also the description of the merchandise in the Decision, C. A. D. 417?—A. Yes, sir.

Q. Now, will you please state whether the merchandise in the present case before the Court is similar in all material respects to that which was the subject of United States vs. Olavarria, C. A. D. 417?—A. Yes, it's similar.

Q. Similar in all material respects?—A. All material respects, yes.

Q. Would you now classify or advisorily classify the present shipment as a sugar sirup under Paragraph 502, in accordance with the principle of the decision in the Olavarria case, C. A. D. 417?—A. Yes, I would.

Mr. Schwartz. All right, no further questions.

Mr. Spector: No cross.

Mr. Schwartz: If the Court please, we now move to incorporate the record in United States vs. Olavarria, C. A. D. 417.

Mr. Spector: Well, no objection.

Judge Ford: So ordered.

In view of the foregoing testimony and the incorporation of the record in *United States* v. *Olavarria & Co., Inc.*, *supra*, it appears that the solution of sugar and water involved herein, containing pineapple flavoring of less than one-half of 1 per centum of the mixture, is similar in all material respects to the merchandise involved in the

incorporated case. That merchandise consisted of cane sugar sirup, containing sucrose and invert sugar, to which had been added an ingredient of from one-eighth to one-sixteenth of an ounce per gallon of flavoring, such as vanillin, mapleine, or white pine. The court pointed out in its opinion that flavored and unflavored sugar sirups were shown by the evidence to have the same general physical characteristics and viscosity, and were used for the same general purposes, and that there was no commercial difference between the two. It was held that a sugar sirup was a saturated solution of sugar in water and that the small amount of flavoring which had been added to the merchandise there involved did not change it into something other than a sugar sirup, *eo nomine* provided for without limitation in paragraph 502.

The Government seeks to distinguish the *Olavarria* case, claiming that the instant merchandise is a fruit sirup, classifiable under paragraph 806 (a) of the Tariff Act of 1930, as modified by the trade agreement with the United Kingdom, T. D. 49753. Counsel for the Government has made a thorough study of the fruit sirup paragraphs in various tariff acts, the legislative history of which indicates that the provision for fruit sirup in paragraph 806 (a) was intended to include all fruit sirups, not specially provided for. However, the argument is not pertinent to the instant case, since the evidence establishes that this merchandise is a *sugar* sirup similar to that involved in the *Olavarria* case and *not a fruit* sirup.

It appears from the official papers that this merchandise was advisorily classified as a nonenumerated manufactured article under paragraph 1558 of the Tariff Act of 1930 at 20 per centum ad valorem, less the Cuban preferential of 20 per centum. However, the collector's letter transmitting the protest to the court states that the merchandise was classified in liquidation as fruit juice or sirup, not specially provided for, under paragraph 806, as amended, at 35 cents per gallon, less the Cuban preferential of 20 per centum. This statement is obviously erroneous since it appears from the liquidator's figures on the amended entry that duty was calculated on the basis of the rate provided in paragraph 1558, less the Cuban preferential.

There is, therefore, no presumption that the merchandise is a fruit sirup. The evidence is to the effect that the merchandise is similar in all material respects to that involved in the *Olavarria* case, which was held to be a sugar sirup, and that it contained less than one-half of 1 per centum of pineapple flavoring. Whether the flavoring was natural or artificial was not established.

Fruit sirup has been defined as an article that is made by mixing sugar with fruit or by cooking fruit with sugar and water. (Summary of Tariff Information, 1921, p. 833; Summary of Tariff Information, 1929, p. 1524.) See also *Sun Rich Beverage Co.* v. *United States*, 25

Cust. Ct. 70, C. A. D. 1266, where it was held that merchandise consisting of a *substantial* quantity of pineapple juice and sugar, with benzoate of soda as a preservative, was properly dutiable as a fruit sirup under paragraph 806 (a), as amended. In the instant case, there is no evidence that natural pineapple juice was an ingredient nor can the amount of flavoring be considered substantial. There is nothing in the record before us upon which to base a finding that the merchandise is a fruit sirup.

On the record as it now stands, we hold that the merchandise is a sugar sirup, properly dutiable under paragraph 502 of the Tariff Act of 1930, as modified by the Supplemental Trade Agreement with Cuba, T. D. 50541, at 0.1 cent per gallon, plus 0.11 cent additional for each per centum over 48 per centum of total sugars and fractions of a per centum in proportion.

The protest is sustained and judgment will be rendered accordingly.